IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAMIRACLE HOLLOWAY,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

CIVIL ACTION FILE

NO. 1:08-CV-1247-JFK

## **FINAL OPINION AND ORDER**

Shaunice Holloway ("Holloway") filed the above-styled action on behalf of[1] her

minor daughter, Plaintiff LaMiracle Holloway ("LaMiracle" or "Plaintiff"), in her

daughter's name, seeking judicial review pursuant to § 205(g) of the Social Security

Act, 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social

Security Administration which denied Plaintiff's application for Child's Supplemental

Security Income. For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

---

[1]See Doc. 1 at 1 and 4 ¶ 4.

## I.    Procedural History

LaMiracle was born on September 24, 2001, and her grandmother, Mildred Holloway, applied for Child's Supplemental Security Income benefits on January 26, 2005. [Record ("R.") at 35, 42-44]. After the application was denied initially and on reconsideration, Plaintiff's grandmother requested an administrative hearing. The hearing was held before an Administrative Law Judge ("ALJ") on January 23, 2007, and the ALJ received testimony from Plaintiff's mother, Holloway, and her grandmother. [R. at 9-10, 14, 300-11]. On September 11, 2007, the ALJ issued a decision denying the application for child's benefits. [R. at 14-24]. A request for review of the ALJ's decision was filed by "Diandra"[2] Holloway on behalf of Plaintiff [R. at 9]; and new evidence was submitted to the Appeals Council [Exhibits ("Exhs") AC-1, R. at 280-91; AC-2, R. at 292-96]. The Appeals Council denied Plaintiff's request for review on January 28, 2008, making the hearing decision the final decision of the Commissioner. [R. at 5-7, 9]. On March 28, 2008, the above-styled complaint [Doc. 1] was filed seeking judicial review of the Commissioner's final decision. A brief has been filed in support of Plaintiff's complaint [Doc. 12]; and the Commissioner has filed a response [Doc. 13]. The parties consented to proceed before

_____

[2]Diandra Holloway's relationship to Plaintiff is not stated.

the undersigned Magistrate Judge and presented oral arguments to the court on November 19, 2008.

## II.    Facts

The ALJ found that Plaintiff has asthma, attention deficit hyperactivity disorder ("ADHD"), an adjustment disorder, and seizures.  [R. at 17].   Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that they did not meet or medically equal the criteria set forth for an impairment listed in Appendix 1, Subpart P, Regulations No. 4.  [R. at 17].  The ALJ also found that Plaintiff's impairments did not functionally equal the listings, either alone or in combination.  [R. at 17-23].  Therefore, Plaintiff was not under a disability. [R. at 24].

The ALJ's decision [R. at 11-19] states the relevant facts of this case, as modified herein, as follows:

Shaunice Holloway, Plaintiff's mother, testified that LaMiracle received overnight treatment for asthma 1½ to 2 years ago and is still receiving treatment for asthma.  [R. at 18, 304, 307-08].  Plaintiff also has a history of febrile seizures. [R. at 186].   However, Holloway testified that Plaintiff "does not have too many problems

AO 72A
(Rev.8/82)

with" seizures now and that her seizure medication "is not given 'too much'";
Plaintiff's problems are now primarily behavioral. [R. at 18, 302-03]. Holloway
testified that Plaintiff was receiving counseling and had not been able to get an
appointment with a psychiatrist. [R. at 306, 308].

Holloway testified that Plaintiff bites and kicks other children; runs after her
sister with a sharp object; and sometimes leaves the house at night. [R. at 18, 307-08].
She further testified that she had to take Plaintiff out of school because of what she
was doing to other kids, that Plaintiff was being home-schooled, and that Plaintiff
would start Kindergarten in the next school year but could not retain information such
as her ABCs, name, or birthday. [R. at 18, 308-10]. Holloway later submitted a letter
dated May 17, 2007, from Plaintiff's Kindergarten teacher, Ms. Grant, indicating that
LaMiracle returned to school after being home-schooled temporarily. [See Exhibit
("Exh") 7E, R. at 76-77; and see R. at 17, 309]. The record shows that Plaintiff entered
First Grade in the next school year, not Kindergarten. [See Exh AC-1 at 281, Basic
Psychological Evaluation by Dr. Susan Hughes May & Associates]. And, the ALJ
noted that Plaintiff had not seen a psychiatrist and was not taking any medication for
a mental impairment [R. at 18-19, 306].

4

Records from Pediatric Clinic, between May 2002 and February 2006 (Exhs 6F, 11F[3]), show that Plaintiff was treated for complaints of back, leg and stomach pain. The ALJ noted that when Plaintiff was examined on February 10, 2005, after sustaining a fall from a buggy one month earlier,[4] there were no reports of pain; her range of motion was normal; and she had normal balance and gait and no evidence of leg trauma. [R. at 18; Ex. 6, R. at 155]. Pulmicort was prescribed for Plaintiff's asthma at that time (physician's signature illegible). However, when Dr. Terry Vester, M.D., performed a consultative medical evaluation on April 19, 2005, he found that Plaintiff was not using the Pulmicort as prescribed, and as a result, her asthma was more active. [Exh 7F, R. at 164; R. at 18-19]. Dr. Vester noted that Plaintiff also was not taking her seizure medications. [Exh 7F, R. at 164]. Holloway reported that Plaintiff had recently been seen in Birmingham for a seizure evaluation; her seizure medication was stopped "because of her asthma meds"; and she had not had any

---

[3]At the hearing, the ALJ indicated that the Commissioner would obtain updated medical records from several sources. [See R. at 304-06]. The record reflects that records were obtained from Grady Health System (Exh 9F), East Alabama Medical Center (Exh 10F), Pediatric Clinic (Exh 11F), Valley Family Physicians (Exh 12F), and Lanier Hospital (Exh 13F). The ALJ indicated that records would also be obtained from Plaintiff's counseling center, The Alsobrook Clinic in Valley, Alabama. [R. at 306-07]. As discussed *infra,* records from the counseling center are not in the transcript.

[4]See R. at 142-46, 160.

5

seizure activity since that time. [R. at 164]. Dr. Vester found Plaintiff to be cooperative during the exam and noted that she related well to her mother; he diagnosed Plaintiff with asthma (moderate), eczema, a small reducible umbilical hernia, and a history of GERD. [R. at 19, 165-66].

On May 24, 2007, Dr. Chaundrissa-Oyeshiku Smith, Ph.D., with Grady Health System, a Licensed Clinical Psychologist, performed a psychological evaluation and cognitive testing of the Plaintiff, who was age five-and-a-half at the time. [Exh 9F, R. at 173-75]. Dr. Smith found that Plaintiff's cognitive abilities were "Average." The therapist noted some oppositional behavior and some aggressive behavior towards Plaintiff's sister; however, during testing Plaintiff responded well to positive reinforcement and significant structure. [R. at 19, 173]. Dr. Smith made a provisional diagnosis of adjustment disorder with mixed disturbance of emotion and conduct, and possible ADHD. [R. at 19, 175]. Although observations from Plaintiff's mother and from Plaintiff's teacher at Heritage Elementary School, Ms. Grant, suggested symptoms consistent with ADHD, Dr. Smith opined that additional observations in the home and school settings may be warranted in order to finalize an ADHD diagnosis. [R. at 174-75].

AO 72A
(Rev.8/82)

The ALJ noted that medical records from Valley Family Physicians, between May 2006 and December 2006, document a report of irritable, defiant behavior and fighting with peers back in August 2005. [R. at 194]. On October 31, 2006, Holloway described Plaintiff as "changing" and reported that Plaintiff was going to a Mental Health Clinic for counseling and that she slept for only one hour at night. [R. at 188]. Other records from Valley Family Physicians document that Plaintiff received treatment for abdominal pain and difficulty with urination and constipation and that she had normal breath sounds and good air entry. [R. at 19; Exh 12F, R. at 182-207].

The ALJ found that the medical evidence of record did not fully support Holloway's allegation that Plaintiff is disabled because while the child's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Holloway's allegations regarding the intensity, persistence and limiting effects of the Plaintiff's symptoms were not entirely credible. [R. at 18-19]. The ALJ cited several examples of disparity between Holloway's testimony and Plaintiff's medical records. Holloway testified that Plaintiff LaMiracle had difficulty learning and retaining information, but Dr. Smith (Exh 9F) found that Plaintiff had normal cognitive abilities. [R. at 19]. Holloway reported that LaMiracle suffered with asthma and seizures, but Dr. Vester (Exh 7F) observed that Plaintiff did not take her

AO 72A
(Rev.8/82)

medications as prescribed for these conditions. [R. at 19]. Holloway reported that LaMiracle had behavioral problems, but Dr. Vester (Exh 7F) found that Plaintiff was very cooperative and related well to her mother. [R. at 19]. And, as noted by the ALJ, Plaintiff was not receiving psychiatric treatment for behavior problems or taking any medications for a mental impairment, and her Kindergarten teacher, Ms. Grant, described LaMiracle as a "sweet girl" (Exh 8E). [R. at 19].

The ALJ found that the weight of the medical evidence of record was consistent with the opinion of state agency nonexamining physician Van B. Hayne, Jr., M.D., who reviewed LaMiracle's medical records on April 27, 2005. Dr. Hayne concluded that Plaintiff had "no to less than marked" limitations in six domains of functioning. [Exh 8F, R. at 19, 167-71]. The ALJ reviewed the six domains of functioning, in light of Plaintiff's medical records, and concluded that Plaintiff does not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning; therefore, she has not been disabled, as defined in the Social Security Act, since January 26, 2005, the date the application for benefits was filed by Plaintiff's grandmother. [R. at 23-24].

8

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

Social Security law provides that an individual under the age of eighteen will be considered disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

Social Security regulations provide a sequential evaluation process consisting of three steps when determining if a child is disabled. 20 C.F.R. § 416.924(a). Whether the child is engaged in substantial gainful activity is the first issue to be addressed by the ALJ. If the child is engaged in such activity, then she is not disabled. Otherwise, the ALJ must then determine at the second step whether the child has a severe impairment. Id. The child is not disabled if she does not have a severe

impairment. But if she does, then the ALJ must determine whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. Id. The child is disabled if she has such an impairment and if it meets the duration requirement. 20 C.F.R. § 416.924(d).

The scope of judicial review of the Commissioner's decision is limited. The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

In Ingram v. Astrue, 496 F.3d 1253, 1262 (11th Cir. 2007), the Eleventh Circuit Court of Appeals held that when evidence not presented to the ALJ is presented to and considered by the Appeals Council, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Therefore, the court will consider the evidence[5] that Plaintiff submitted to the Appeals Council ("AC") in determining

_____

[5]Plaintiff provided the Appeals Council with a psychological evaluation performed by Dr. Susan Hughes May, dated November 19, 2007 [Exh AC-1, R. at 280-

whether substantial evidence in the record as a whole supports the Commissioner's final decision to deny benefits.

## IV.   Findings of the ALJ

The ALJ made the following findings:

1.   The Plaintiff was born on September 24, 2001. Therefore, she was a preschooler on January 26, 2005, the date the application was filed, and is currently a preschooler (20 C.F.R. § 416.926a(g)(2)).

2.   The Plaintiff has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§ 416.924(b) and 416.972).

3.   The Plaintiff has the following severe impairments: asthma, ADHD, an adjustment disorder and seizures (20 C.F.R. § 416.924(c)).

4.   The Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926).

5.   The Plaintiff does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) and 426.926a).

6.   The Plaintiff has not been disabled, as defined in the Social Security Act, since January 26, 2005, the date the application was filed (20 C.F.R. § 416.924(a)).

---

91], and medical records from Emory Healthcare, dated August 31, 2007 [Exh AC-2, R. at 292-96].

[R. at 17-24].

## V.     Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff had never engaged in substantial gainful activity.  [R. at 17].  At the second step, the ALJ determined that Plaintiff's asthma, ADHD, an adjustment disorder and seizures are severe impairments.  [R. at 18].  However, at the third step, the ALJ found that Plaintiff's impairments do not alone or in combination meet, medically equal, or functionally equal the criteria necessary to establish disability as defined under the Social Security Act. [R. at 7, §§ 4-5].  Plaintiff's counsel[6] contends that the Commissioner erred in not finding that Plaintiff's severe impairments – asthma, ADHD, an adjustment disorder, and seizures – alone or in combination, **functionally equal** a listed impairment

Specifically, as argued before the court, Plaintiff's counsel contends that LaMiracle's limitations are functionally equal to Listing 112.11, ADHD,[7] and that

_____

[6]The court recognizes that Plaintiff, a minor, did not have the legal capacity to retain counsel and that counsel was, apparently, retained on her behalf after the ALJ hearing.

[7]To *meet* the criteria for a Listing impairment based on ADHD for children age 3 to attainment of age 18, Plaintiff would have to show ADHD "[m]anifested by

AO 72A
(Rev.8/82)

Plaintiff's delusional symptoms are functionally equal to Listing 112.03,

Schizophrenic, Delusional (Paranoid), Schizoaffective, and Other Psychotic Disorders.[8]

---

developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity" meeting the required level of severity as demonstrated by: "A. Medically documented findings of . . . 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity" which "B. . . . result[ ] in at least two of the appropriate age-group criteria in paragraph B2 of 112.02[,]" i.e.:

> a.    Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings; or
> b.    Marked impairment in age-appropriate social functioning, documented by history and medical findings; or
> c.    Marked impairment in age-appropriate personal functioning, documented by history and medical findings; or
> d.    Marked difficulties in maintaining concentration, persistence, or pace.

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B, §§102 B.2, 112.11. Information from parents or other individuals who have knowledge of the child (when such information is needed and available), and, if necessary, appropriate standardized tests, are taken into consideration. Id., §102 B.2. Plaintiff does not contend that her impairments meet or medically equal Listing 112.11.

[8]To *meet* Listing 112.03, Plaintiff would have to show "onset of psychotic features, characterized by a marked disturbance of thinking, feeling, and behavior, with deterioration from a previous level of functioning or failure to achieve the expected level of social functioning." The required level of severity is met when a claimant can show:

> A.    Medically documented persistence, for at least 6 months, either continuous or intermittent, of one or more of the following:
> > 1.    Delusions or hallucinations; or
> > 2.    Catatonic, bizarre, or other grossly disorganized behavior; or
> > 3.    Incoherence, loosening of associations, illogical thinking, or poverty of content of speech; or

AO 72A
(Rev.8/82)

Plaintiff's counsel contends that Dr. Smith's cognitive testing and comments by Plaintiff's Kindergarten teacher provided substantial evidence to support a finding of disability and that the ALJ failed to consider a head injury which Plaintiff sustained at age 3 when she fell out of a buggy at a department store, hit the concrete floor and experienced a loss of consciousness for four (4) hours. [Doc. 12 at 2-3]. Plaintiff's counsel further contends that the AC should not have denied review because the post-hearing report of Dr. May documents that Plaintiff sustained right frontal lobe damage and has experienced hallucinations and that Plaintiff has marked limitations in all six domains of functioning. [Id.].

To determine whether a child's impairments are functionally equal to a listed impairment, a child's functional limitations are evaluated in the six broad functional areas, called domains, considered by the ALJ, including:

1.    Acquiring and using information;
2.    Attending and completing tasks;
3.    Interacting and relating with others;
4.    Moving about and manipulating objects;

---

4.    Flat, blunt, or inappropriate affect; or
5.    Emotional withdrawal, apathy, or isolation; and
B.    . . . at least two of the . . . criteria in paragraph B2 of 112.02.

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B, §§102 B.2, 112.03 (emphasis added). Plaintiff does not contend that her impairments meet or medically equal Listing 112.03.

AO 72A
(Rev.8/82)

5.    Caring for yourself; and
6.    Health and physical well-being.

See 20 C.F.R. § 416.926a(b)(1); §§ 416.926a(g) through (k).  If a child has "marked" limitation in two domains or an "extreme" limitation in one domain, the child's impairment(s) are considered functionally equivalent to a listed impairment.  See 20 C.F.R. § 416.926a(d).

A child has a "marked limitation" in a domain of functioning, if the impairment(s) "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities.  See 20 C.F.R. § 416.926a(e)(2).  A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limits several activities.  Id.  A marked limitation is described as "more than moderate" but "less than extreme."  Id.  [And see R. at 15-16].

A child has an "extreme" limitation in a domain of functioning when her impairment(s) interferes very seriously with her ability to independently initiate, sustain or complete activities.  See 20 C.F.R. § 416.926a(e)(3).  A child's day-to-day functioning may be very seriously limited when her impairment(s) limits only one activity or where the interactive and cumulative effects of her impairments limit several activities.  Id.  [See also R. at 16].

15

As noted earlier, the scope of judicial review of the Commissioner's decision is limited. The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards. See Vaughn, 727 F.2d at 1042. To that end the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence," i.e., supported by "such relevant evidence as a reasonable person would accept as adequate" to support the Commissioner's conclusion. See Bloodsworth, 703 F.2d at 1239. Therefore, the only issues before the court are whether substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff does not have "marked" limitation in two domains or an "extreme" limitation in one domain out of the six domains of functioning and whether the AC's decision to deny review after receiving additional evidence was supported by substantial evidence.

Analyzing Plaintiff's evidence in light of the six domains of functioning, the ALJ began with the domain of acquiring and using information and found that Plaintiff has no limitation. In making that determination, the ALJ noted that Dr. Smith (Exh 9F) had found that Plaintiff has Average cognitive abilities. [R. at 20, 173-75]. The court finds that the ALJ's conclusion is consistent with Dr. Vester's observation that

AO 72A
(Rev.8/82)

Plaintiff's speech and language were appropriate for her age. [R. at 165]. It is also consistent with records from Dr. R. Bob Mullins, Jr., with Valley Family Physicians, LLC, which were received post-hearing but prior to the ALJ's decision. While treating Plaintiff on June 11, 2007, Dr. Mullins noted that she demonstrated no impairment of recent or remote memory, had a normal attention span and ability to concentrate, was able to name objects and repeat phrases, and had an appropriate fund of knowledge. [R . at 189].

Plaintiff 's counsel argues that even though Dr. Smith found that Plaintiff had "Average" cognitive skills overall, greater weight should have been given to Dr. Smith's finding that Plaintiff's verbal skills at age 5 ½ were below average (at 3 year-7 month and 4 year-7 month levels for receptive language and expressive language, respectively). [Doc. 12 at 3, citing R. at 173]. Dr. Smith administered the Upper Preschool Core Battery of the Differential Abilities Scale ("DAS"), a test designed for use with children aged 3 ½ to 5 years old. [R. at 173]. Plaintiff's overall score on the DAS was 91 (95% confidence interval = 84-98), indicating overall performance within the "Average" range. [Id.]. On the Verbal Cluster of the DAS, Plaintiff's overall performance was at the high end of the Borderline or "slow learner" range with a Verbal Cluster score of 77 (95% confidence interval = 68-89). [Id.]. Plaintiff's scores

17

on the verbal and non-verbal subclusters of the Verbal Cluster varied widely, suggesting to Dr. Smith that Plaintiff's expressive language abilities are significantly better than her receptive language abilities. As noted in Plaintiff's brief, both were below average, at 3 year-7 month and 4 year-7 month levels, respectively. [Id.]. However, on the Nonverbal Cluster, Plaintiff's performance ranged from a 5 year-1 month level (on Copying) to a level above 8 years-3 months (on Picture Similarities), and Plaintiff scored a 106 (95% confidence interval = 95-115) which is within the "Average" range. The court finds that Plaintiff's medical records as a whole provide substantial evidence in support of the ALJ's conclusion of no, and certainly no marked or extreme, functional limitation in the domain of acquiring and using information.

In the domain of attending and completing tasks, the ALJ found that Plaintiff has no limitation. [R. at 21]. The ALJ noted that there are no reports from Ms. Grant, the Plaintiff's teacher, that Plaintiff has difficulty completing tasks due to her impairments. [Id., citing Exh 8E]. Plaintiff's brief argues that Ms. Grant stated that Plaintiff sometimes exhibits behaviors of "acting too young for age, can't concentrate, can't pay attention for long, can't sit still, restless, or hyperactive, inattentive, easily distracted and is 'too shy or timid'" and that these impairments make it difficult for Plaintiff to be successful in school. [Doc. 12 at 3, citing R. at 174].

18

The court finds that Dr. Smith took into consideration the above noted observations by Ms. Grant. And, Dr. Smith went on to opine that while some oppositional behavior and some aggressive behavior by Plaintiff toward her sister were noted, "[d]uring therapy sessions, LaMiracle has, for the most part, been cooperative [and s]he responds well to positive reinforcement and significant structure." [R. at 174]. Hence, there is substantial evidence that Dr. Smith's report does support the ALJ's conclusion of no limitation in the domain of attending and completing tasks. Other evidence of record that supports the ALJ's conclusion includes Ms. Grant's report that while Plaintiff has some difficulty recalling information, she nevertheless "tries very hard to complete assignments" [R. at 77], and Dr. Mullins' October 31, 2006, observation that Plaintiff has a "normal attention span and ability to concentrate" [R. at 189]. In addition, the court notes that while Ms. Grant stated that Plaintiff was below grade level in all academic areas in Kindergarten [R. at 77], Plaintiff nonetheless advanced to First Grade the following year. [R. at 281]. And, Dr. May found that Plaintiff was functioning slightly below grade level in reading and arithmetic and spelling in First Grade, but psychological testing showed that Plaintiff's overall cognitive ability is in the Average range of intellectual functioning. [R. at 288]. Based on the foregoing evidence, the court finds that the ALJ's conclusion that Plaintiff has

no limitation, and certainly no marked or extreme, limitation in the domain of attending and completing tasks is supported by substantial evidence.

In the domain of interacting and relating to others, the ALJ found that the Plaintiff has no limitation. [R. at 21]. In reaching this conclusion, the ALJ found that "[r]ecords indicate the Plaintiff is cooperative, and relates well to her mother." [Id.]. [See Exh 7F, Dr. Vester, R. at 165]. The ALJ also noted that "[Plaintiff] responded well to positive reinforcement, and was described as sweet." [R. at 21; and see Exh 9F, Dr. Smith, R. at 174; Exh 8E, Ms. Grant, R. at 77]. Plaintiff's brief argues that Plaintiff is aggressive towards other students and this causes her to have difficulty staying in school and that it was recommended that she be placed in a private school. [Doc. 12 at 5]. Although Holloway testified that the Plaintiff had to be taken out of Kindergarten because she was aggressive with her peers, as noted earlier, her teacher, Ms. Grant, stated in a letter dated May 17, 2007, "I am LaMiracle Holloway's Kindergarten teacher[,]" which indicates that Plaintiff was only home-schooled for a short time and that any difficulty interacting with her peers did not prevent her from returning to school to complete Kindergarten. The court finds that substantial evidence supports the ALJ's conclusion that Plaintiff does not have any, let alone marked or extreme, limitation in the domain of interacting and relating to others.

AO 72A
(Rev.8/82)

In the domain of moving about and manipulating objects, the ALJ found that the Plaintiff has no limitation. [R. at 22]. The ALJ found that "[Plaintiff] has normal balance and gait [and] no indication of impairment in this domain." [Id., citing Pediatric Clinic, Exh 6F, R. at 155, dated February 10, 2005; Pediatric Clinic, Exh 11F, R. at 178-81, records dated May 18, 2005, through February 1, 2006]. The records cited by the ALJ are consistent with Plaintiff's other medical records in evidence. Dr. Mullins noted on October 31, 2006, that Plaintiff had normal coordination in her upper and lower extremities. During a well-child visit on August 25, 2006, Dr. Nadia Cameron, M.D., also with Valley Family Physicians, had noted that Plaintiff could balance on each foot for two seconds and hop. [R. at 194]. On March 13, 2005, when Plaintiff was admitted to the Emergency Department at East Alabama Medical Center with complaints of back and leg pain, Dr. Philip Heidepriem, M.D., found that Plaintiff was playful and able to run in the hall without any difficulty or limitation, was able to climb back on the stretcher, appeared to be neurologically and neurovascularly intact, and she reportedly had not changed her activity level since falling out of a buggy two months previous. [R. at 176-77]. Dr. Vester found that Plaintiff has normal reflexes in her upper and lower extremities and that her fine and gross manipulation are intact. The court finds that the ALJ's conclusion of no, and certainly no marked or extreme,

limitation in the domain of moving about and manipulating objects is supported by substantial evidence.

In the domain of caring for self, the ALJ found that Plaintiff has no limitation. [R. at 22-23]. The ALJ found that "[t]here is no indication that the Plaintiff cannot care for her physical needs or refrain from self-injurious behavior." [R. at 23]. Although the ALJ did not cite to the record in stating this conclusion, the court finds that this was harmless error because substantial evidence of record supports the ALJ's conclusion of no, and certainly no marked or extreme, limitation in the domain of caring for self. Plaintiff's grandmother completed a Function Report – Child, on February 2, 2005, and indicated that Plaintiff usually controlled her bowels and bladder during the day at age three (3), was eating using a spoon by herself, was dressing and brushing her teeth with help, and put her toys away. [R. at 59]. On August 25, 2006, Dr. Cameron, Valley Family Physicians, in treating Plaintiff noted that she was toilet trained, washed and dried her hands and dressed with no help, thus, reflecting Plaintiff's progress with self care since February 2005. [R. at 194]. The court finds that substantial evidence supports the ALJ's conclusion that Plaintiff is able to care for self, in an age appropriate manner.

22

In the sixth and final domain of functioning, the ALJ found that Plaintiff has less than marked limitation in her health and physical well-being. The ALJ supported this conclusion by noting that "[Plaintiff] requires the use of asthma and seizure medications, although she does not take them regularly." [R at 23]. Although the ALJ did not cite to Plaintiff's medical records in stating his conclusion that Plaintiff has less than marked limitation in her health and physical well-being, he had previously noted that two months after she was prescribed Pulmicort for her asthma, Dr. Vester found that Plaintiff was not using the Pulmicort as prescribed[9] and that her asthma was more active as a result. [R. at 18-19; Exh 7F, R. at 164]. And, Dr. Vester noted that Plaintiff was no longer taking her seizure medications and had not had a seizure since discontinuing her medication. [Id.; Exh 7F, R. at 164]. The court notes that Holloway testified that Plaintiff had a seizure six months before the hearing [R. at 303]; however, the court is unable to find, nor does Plaintiff's counsel cite any medical record verifying that such a seizure occurred. Based on the medical records discussed *supra*,

---

[9]Holloway told Dr. Vester that she was unable to afford the Pulmicort; therefore, Dr. Vester noted that medication seemed to be a problem for LaMiracle to obtain, although her frequent use of Albuterol (an inhaler) was a reason for concern. [R. at 164, 166]. Plaintiff's medical records show, however, that Holloway filled ten prescriptions for Pulmicort during the twenty-two month period between February 2005 and December 2006, 100% of which was covered by insurance. [R. at 70-74]. And, Holloway was obtaining medication for Plaintiff, including Pulmicort, free of charge as late as June 2007. [R. at 79-87].

23

the court finds that the ALJ's determination that Plaintiff had less than marked limitation in her physical health and well-being is supported by substantial evidence.

In addition, the court finds that the AC did not err in denying review after receiving supplemental records from Emory Healthcare. Plaintiff submitted follow-up instructions dated August 31, 2007, regarding care post-seizure, but no record indicating the nature of the seizure(s). [Exh AC-2, R. at 292, 294]. Plaintiff submitted prescription records dated two days previous for Keflex (an antibiotic), Orapred (a corticosterioid commonly used to treat inflammation in connection with asthma, allergies and arthritis[10]), and "H[ ]conozole," none of which prescriptions are, as far as the court can determine, seizure medications. Plaintiff also submitted a prescription for Fluconozole, dated August 31, 2007, which the court notes is a drug used to treat oral, esophageal, urinary, vaginal and possibly other organ infections caused by the fungus Candida, thus, also not a seizure medication.[11] [Exh AC-2, R. at 292-96]. Plaintiff's supplemental medical records from Emory Healthcare did not provide substantial evidence which would have led the AC to conclude that the ALJ may have changed the determination that Plaintiff was not eligible for benefits.

---

[10]See https://ssl.search.live.com/health/article.

[11]See www.medicinenet.com/fluconazole/article.htm.

The ALJ found that the opinion of the non-examining state agency physician, Dr. Van B. Hayne, Jr., M.D., dated April 27, 2005, supported a conclusion that Plaintiff had no to less than marked limitation in the domains of functioning. [Exh 8F, R. at 167-72; R. at 19]. SSR 96-6p states that findings of fact by State agency medical and psychological consultants and medical record reviewers must be treated as expert opinion evidence of nonexamining sources and that the ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." And see 20 C.F.R. § 404.1527(f). Dr. Hayne found that while Plaintiff had a history of seizures for which she had been seen the previous year, she had not followed up with treatment and took no medications for seizures. [R. at 170, 172]. And, Dr. Hayne opined, "[it] is not absolutely clear if [a] seizure [diagnosis was] ever clearly made." [R. at 172]. Dr. Hayne also noted that Dr. Vester had detected no behavior problems in Plaintiff at age three and had found that her speech and language were normal, that her fine and gross manipulation were intact, and that her gait was normal. [R. at 170]. The court finds that the record supports the weight given by the ALJ to the non-examining physician's report because it did not contradict information in the examining physicians' reports. See Edwards v. Sullivan, 937 F.2d 580, 585 (11th Cir. 1991).

Plaintiff's counsel contends that the ALJ failed to consider a head injury which Plaintiff sustained at age three (3) when she fell out of a buggy at a department store, hit the concrete floor and experienced a loss of consciousness for four (4) hours and that she also suffered a subsequent loss of consciousness for eight (8) hours. [Doc. 12 at 8]. The court finds that Holloway's reports and testimony regarding Plaintiff's episodes of unconsciousness are flatly contradicted by her medical records. Plaintiff's brief cites to Exhibit 2 as documenting her fall from a buggy. [Doc. 12 at 2]. Exhibit 2, however, consists of records from Alabama Neurological Clinic, P.A., when Plaintiff was evaluated on July 26, 2002, at ten months of age, for possible[12] seizures. [R. at 94-96]. The fall from a buggy alluded to by Plaintiff's counsel occurred two and a half years later, on January 28, 2005, as documented by records from Lanier Health Service [R. at 142-46] and a "Centramax.M" Triage Call Documentation Report [R. at 160]. Holloway reported that Plaintiff had lost consciousness for a few seconds and was complaining of pain in her left shoulder. [R. at 160]. Yet, medical records from East Alabama Medical Center where Plaintiff was seen on March 13, 2005, for complaints of back and leg pain document Dr. Heidepriem's opinion that Plaintiff had "questionably" hit her head and "questionably" was unconscious for several minutes

---

[12]An electroencephalogram showed an absence of epileptiform discharges but did not entirely rule out seizures; clinical correlation was recommended. [R. at 97].

AO 72A
(Rev.8/82)

when she fell out of a buggy two months previous and reportedly had some difficulty walking initially after the event. And, Dr. Heidepriem found that Plaintiff was playful, had not changed her activity level, was able to run in the hall of the medical center without any difficulty or limitation, and was able to climb back on the stretcher. [R. at 176-77]. In Dr. Heidepriem's opinion, Plaintiff did "not appear to have any changes associated with any head injury since the incident occurred two months ago [and] the patient would have further symptoms at this point if there was felt to be other problems [and] the patient reportedly ha[d] not passed out since she fell two months ago." [R. at 177]. Plaintiff's brief contends that she lost consciousness for 8 hours on one later occasion but does not cite to medical records verifying such an event. [Doc. 12 at 2]. The court notes that when Dr. May evaluated Plaintiff in November 2007, Holloway reported that Plaintiff had experienced a seizure two months earlier when she was unconscious and unresponsive for approximately twelve (12) hours. [R. at 282]. The court can find no medical records verifying that Plaintiff was unconscious for eight or twelve hours as alleged by Holloway.

Plaintiff's counsel argues that Plaintiff has severe behavioral problems. [Doc. 12 at 2, 4]. In determining that Plaintiff has no limitation in the fifth domain of functioning, the ALJ stated that there is no evidence of self-injurious behavior. [R. at

27

23]. Holloway testified that Plaintiff leaves the house at night, tears her clothes, and bites herself. [R. at 308, 310]. The record reflects that Holloway reported similar behavior problems to Dr. Cameron [R. at 194-96] and reported to Dr. Mullins that the Plaintiff was having mood changes and insomnia and was going to a Mental Health Clinic for counseling [R. at 188]. During the hearing, the ALJ indicated that the Commissioner would request records from the mental health counseling facility identified by Holloway as The Alsobrook Clinic in Valley, Alabama. [R. at 307]. Those records were, apparently, not received as they are not in the record. The court finds, however, that this was harmless error, if any, in light of the psychological evaluation performed by Dr. May eleven months after the hearing, which was submitted to the AC.

Dr. May's report states that Plaintiff was referred by a Dr. Helena Bentley due to learning difficulties and behavioral problems, in order to obtain estimates of psychological distress and intellectual and academic skills and to help determine the appropriateness of a therapeutic intervention. [R. at 281]. The court is unable to find any mention in Dr. May's report of psychological counseling at The Alsobrook Clinic in Valley, Alabama, or that Plaintiff had seen a psychiatrist or been placed on

28

medication for a mental impairment.[13] [Id.]. Holloway reported that Plaintiff exhibits aggression toward her peers, shows little respect for authority, has tantrums when she does not get her way, becomes violent, and exhibits self-injurious behaviors such as biting herself and cutting her clothes with scissors. [R. at 282]. Holloway completed the "Brown Attention-Deficit Disorder Scales for Children" for Dr. May; and based on the Holloway's statements, Dr. May found that Plaintiff's behavior was in the Markedly Atypical range, denoting very significant problems with organizing, prioritizing and activating to work; focusing, sustaining and shifting attention to tasks; regulating alertness, sustaining effort and processing speed, managing frustration and modulating emotions; utilizing working memory and accessing recall; and monitoring and self-regulating actions. [R. at 287-88]. And, Holloway reported that Plaintiff had experienced a seizure during which she was unconscious for twelve hours. [R. at 282]. However, as noted *supra*, the court cannot find, nor has Plaintiff's counsel identified, medical records verifying Holloway's contention that Plaintiff was unconsciousness for twelve (12) hours sometime in 2006.

Dr. May also noted Holloway's report that Plaintiff's cousin had been killed shortly before the evaluation; that her aunt had died on Plaintiff's birthday; and that

---

[13]Dr. Helena Bentley is, as far as the court can determine, a pediatric physician. See http://www.thecityofatlanta.com/physician/physician-pediatrician.html.

AO 72A
(Rev.8/82)

another cousin died three months earlier due to drowning. [R. at 282]. Holloway described Plaintiff as "nervous" and reported that Plaintiff heard voices and saw things that were not there. [Id.]. Testing administered to assess Plaintiff's level and nature of anxiety including (a) physiological anxiety, (b) worry/over sensitivity, (c) social concerns and concentration, and (d) honesty in responding, yielded scores that were not consistent with a diagnosis of anxiety; and there were no significant elevations. [R. at 286].

The court finds that the AC did not err when it determined that Dr. May's report would not have changed the ALJ's decision that Plaintiff does not have two marked or one extreme limitation in the domains considered when determining whether a child's impairments are functionally equal to a listed impairment. As discussed *supra*, the ALJ found that Holloway's reports of Plaintiff's limitations were directly contradicted by the medical records and not supported by other subjective reports. Likewise as discussed above, Dr. May's opinion was based largely on Holloway's self-reports and is markedly inconsistent with the observations by Plaintiff's medical providers of record. The court finds, therefore, that Dr. May's report would not have changed the ALJ's decision which, as the court has found, is supported by substantial evidence of record.

AO 72A
(Rev.8/82)

## VI.    Conclusion

For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards and that the AC did not err when it determined that the additional evidence submitted by Plaintiff post-hearing did not provide a basis for changing the ALJ's decision.  It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.  See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this 9th day of February, 2009.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)